BANKS, Justice,
for the Court.
This case presents the question whether summary judgment was properly granted in favor of one employing another where the terms of employment are such that the employer retains responsibility for the safety aspects of the job. There is also the question of vicarious liability. We find that the interpretation of the scope of the employer’s obligations regarding safety is a factual one not amenable to summary resolution on this record. We also reverse the judgment in all particulars and remand for further proceedings on this and the remaining issue.
J.
On January 12, 1990, Jacqueline Hudgins, individually and on behalf of her daughters and Antonio’s father, filed a complaint against Pensacola Construction Company, Inc. (Pensacola) and Lewis Miller Construction Company, Inc. (Miller) for the wrongful death of her son, Antonio, age eight. Hud-gins’s brought the complaint premised on the contention that Pensacola and Miller permitted Price and Sanders to use a dragline/exca-vator to dredge and remove sand, gravel and fill dirt from a previously undredged shallow/water area and that such negligent acts proximately caused the death of decedent, Antonio. The Hudgins sought damages for pain and suffering, mental anguish, loss of companionship and society, and loss of future earnings for Antonio’s life in the amount of $5,500,000.
*993 On February 21, 1990, Pensacola filed its “Answer” responding inter alia that the complaint failed to state a cause of action and claimed affirmatively that they would show 1) that they cannot be held responsible for the actions of Price and Sanders since Price and Sanders were both independent contractors; 2) that plaintiffs have previously made claim against Price Construction Company which was the independent contractor referred to above and that the covenant not to sue prohibits plaintiff for maintaining any action whatsoever grounded in the alleged wrong doing of Price Construction Company; 3) that no duty owed to Plaintiffs or Plaintiffs’ decedent was breached; and that 4) the sole proximate cause of the decedent drowning was the negligence of third parties over whom they had no control.
After discovery, Pensacola and Miller moved for summary judgment on November 15,1990. On March 12,1991, Hudgins filed a brief in opposition to defendants’ motion for summary judgment. On March 18,1991, the court held a hearing on the summary judgment motion, and on March 21, 1991, the court entered its order granting the summary judgment in favor of Pensacola and Miller. From that decision, Hudgins prosecutes this appeal.

II.

Pensacola was the general contractor hired by the Corp of Engineers to perform work on a project known as the Fort Pemberton project in Leflore County, Mississippi. Miller was hired by Pensacola as a sub-contractor to provide the dirt and sand to Pensacola for use at the Fort Pemberton project. On June 26, 1987, Miller hired Price and Sanders to haul sand to the Fort Pemberton job site in Leflore County, Mississippi for $2.00 per yard L.V.M. Two days after Price and Sanders began its work, June 28, 1987, Antonio drowned while wading when he fell in a hidden hole 100 feet long, ten (10) feet deep and twelve (12) feet wide at the Big Sand Creek.[1] After the drowning, the Leflore County School Board put up a gate which prevented Price from entering the Big Sand creek until an agreement was reached.
On July 13,1987, after Miller’s representative, Sessums, negotiated a price to reenter the creek, Price entered into a written agreement in which Price agreed to relieve Miller, Pensacola, the U.S. Army Corps of Engineers and the State of Mississippi from all claims and demands of or arising from the mining, loading, and/or delivery of the sand material as of the aforesaid date of the agreement.
In granting the summary judgment in favor of Pensacola and Miller, the Leflore County Circuit Court found inter alia that Price was an independent contractor and that Pensacola and Miller’s responsibility for handling safety was limited to furnishing safety to control of traffic where the trucks left and entered the highway.

III.

We have stated on countless occasions that summary judgment should not be granted unless the movant successfully demonstrates “that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.” See, e.g., Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss.1983). The benefit of all doubt must be given to the party opposing the motion. Miss.R.Civ.P. 56 comment. Where additional facts will add clarity and a greater assurance of a just disposition on the merits, the trial court should deny the summary judgment. Donald v. Reeves Transport Co. of Calhoun, Georgia, 538 So.2d 1191 (Miss.1989).
In the instant case, there is a dispute over who maintained the responsibility for site safety. Sessums, superintendent for Miller at the time of the accident, stated in his affidavit that Miller was responsible for furnishing all the site safety.[2] Sanders also *994 stated by affidavit that Miller was responsible for handling all safety aspects of the job, that Miller provided and posted the road signs warning the motoring public that trucks were entering Highway 7 from the canal area, and provided traffic control.
In refuting Hudgins’ contention that “all the site safety” included the place where Price was excavating, Miller stated that they were only responsible for traffic control to which the drowning was not causally related. Miller relies upon Lancaster v. Lancaster, 213 Miss. 536, 57 So.2d 302, 305 (Miss.1952), where after the plaintiff, an employee of an independent contract, was injured while watering sod at a construction site at night, we held that Michael’s, the employer of the independent contractor, duty to put adequate warning signs on the highway was not causally related to the plaintiffs injuries. Id. at 305.
The circuit court found that Pensacola and Miller’s responsibility was limited to furnishing safety to control of traffic where the trucks left and entered the highway. In its findings, the court stated that
“The troubling parts of Sanders’ second affidavit[3] are (1) his statement and explanation of his own (or someone else’s) interpretation of the meaning of “responsible for handling all safety. Taken and considered with Sessum’s affidavit regarding safety, it is clear to this Court that the only “safety” required by the Corps of Engineers was the control of traffic where the trucks left and entered the highway.
This is clearly a factual issue. Shaw v. Burchfield, 481 So.2d 247 (Miss.1985) citing Smith v. First Federal Savings and Loan Assoc. of Grenada, 460 So.2d 786, 792 (Miss.1984). We hold that summary judgment is inappropriate here because there is a disputed issue of fact over the scope of any assumption of responsibility for “all safety.” We therefore reverse.

IV.

The trial court also found that Price and Sanders were independent contractors. Because this matter will be the subject of further proceedings and factual development, we decline to resolve that issue now. We reverse as to the independent contractor issue for further factual development.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.

. The Big Sand Creek was visited frequently by the public who waded, swam, rode 4-wheelers, roasted wieners and conducted other activities.

. We, Lewis Miller Construction Co., was (sic) responsible for furnishing all the site safety. The Corp. required us to have traffic control which included road signs. We were in a hurry to get the job started so we asked Price and Sanders to go on and start hauling and I would handle the traffic control and sign posting for the vehicles entering the roadway from the canal. I called *994 Vicksburg and got some signs sent to us and we went and put some signs out and done our own traffic control on the job. (sic). This was the only safety work Lewis Miller Construction did. The only thing we hired Sanders and Price to do was trucking and to get the material to the job. We, Lewis Miller Construction Co., had to handle all the safety aspects of the job and make sure the material was right.

. On December 13, 1990, Johnny Sanders stated by affidavit in pertinent part that "Our contract with Lewis Miller Construction Company Inc. was solely a contract to transport sand to the Fort Pemberton job site and my only other job requirement was to have my trucks- insured. "Lewis Miller Construction Company, Inc. was responsible for handling all safety aspects of the job and this was demonstrated by the fact that Lewis Miller Construction Company, Inc. provided and posted the road signs warning the motoring public that trucks were entering Highway 7 from the canal area, provided traffic control and further evidenced by the fact that we received $2.00 per yard for hauling whereas Nelson Materials and Ferguson bid $4.50 per yard for complete responsibility on the hauling ..."